Next case is Climax Molybdenum v. Molychem v. Raymond Pizarro, 2008, 1386 We will hear from Mr. Pizarro when he will present his case. May it please the court, my name is Raymond Pizarro. I am the appellate pro se. The court issued in this case is whether the law permits Molychem to turn over a profit from an attorney's fee award granted pursuant to a fee shifting statute, which I believe, of course, that 35 U.S.C. is the fee shifting award. The order under appeal allowed Molychem to turn a profit by awarding attorney's fees at a rate of $300 an hour and then allowing Molychem to account for those fees at a rate of $100 an hour when it came time to distributing those fees. Mr. Pizarro, you've raised two arguments, as I see it, that the district court's determination violated section 285 and the applicable Colorado rules of professional conduct. And my question to you is, have you raised those arguments, did you raise those arguments before the district court? Yes, before the district court I raised several arguments. I know you raised several arguments, but it seemed to me they were different arguments. I didn't, at least in my mind, I didn't see them as different arguments. The key argument was how this thing should be distributed. 285 is a fee shifting statute, and therefore the argument was that the entire amount of fees should be expended, considered expended, and then deducted from the gross amounts collected. That was one of the arguments. And then the second argument pertaining to the ethical issues, that was consistent with all of this in that the Colorado rules of professional conduct would require that there be some discussion about how these things would be handled. It didn't have that in the agreement. Did you say to Judge Match, hey, Judge, wait a second, you're being asked to violate the Colorado rules of professional conduct? Come on, you say, Judge, please, we don't want you to do that, heaven forbid. I think that's the thrust of what Judge Lynn, I think, is asking is, was the district court judge fully apprised of your aghast concern that the judge was about to be a participant in a violation of ethics in his own court? Let me see. The judge's order says there's no merit to Pizarro's suggestion that some lack of compliance with the professional rules concerning with professional rules of governing contingence fees should allow him to... Then it says including his own professional shortcoming. I didn't understand what that was referenced to. I think that was referencing to the... I think he was left under the impression that I wrote the agreement when I did not write the agreement. I mean, it seemed to me you pressed before the district court a quantum merit argument, you pressed an unjust enrichment argument, and you argued that there wasn't a special clause in the agreement that dealt with this circumstance, but I didn't see anything with respect to Section 285 or this ethical issue that you're pressing here. Well, they were, I mean, the awards were granted pursuant to 35 U.S.C. 285, and therefore, I mean, I felt that it wasn't necessary. It was understood that that's where the authority came from. Well, I mean, what we're talking about here is the fact that as an appellate court, we generally, we don't review things in the first instance. We are reviewing decisions made by a district court, and where a party doesn't give the district court the opportunity to address an argument, then we generally do not address those arguments in the first instance here, that those arguments are frequently deemed waived. Well, I think that the distinction is whether the exact same language needs to be used underneath, before the trial court, or whether the argument itself is exactly what the law would provide under 35 U.S.C. 285. If I didn't mention 35 U.S.C. 285, but the operation of law was exactly what would have come under 35 U.S.C. 285, then I think the district court did have a chance to address it. I mean, I would agree with you. The problem I'm having is that it's not language I don't, I'm quibbling with. It's that I don't see the arguments, the concepts pressed before the district court. But I don't want to take all of your time on this. And then there's one last, I think, I do believe like one of the second or third point that I raised in the motion to enforce the attorney's lien actually said whether the fees should be shared with Mollikin or whether they should be distributed as I was, you know, all to the attorneys. But the court, Mr. Pissarro, the court basically enforced your agreement, an agreement that you were party to, didn't it? Yes. Well, yes, Your Honor, they enforce it in an interpretation which allowed to, which felt that took the attorney's fees incurred or expended in Mollikin's defense as being just the out-of-pocket expenses of Mollikin, not the award amount. And my understanding of the law pertaining to fee-shifting statutes is that a party incurs an attorney fee, even though they had no obligation to pay for it, if they were incurred on behalf of that party in the trial court. Were you objecting to Mollikin being able to get back the $100 an hour that they paid you? No, no, I have no problem with that. Don't you have a problem with that because you're letting them have a legal fee? No, they're getting reimbursed for the actual out-of-pocket expenses that they had already paid me. Yeah, but the out-of-pocket expenses included $100 an hour for your fees. Well, the object of these statutes is that. I'm trying to get at the point. I understood the math that was working here was that you had no objection to Mollikin getting $100 an hour, which is what they had, you had billed them earlier and they had paid you. Yes. Now, when the Lodestar comes through, the big money, Mollikin is out of its pocket $100 an hour to you already. And as I understood it from the kill, the big number, you're perfectly happy to let Mollikin have it paid, reimbursed its attorney's fees, the $100. Yeah. And I'm saying to myself, how can you do that and be consistent? Because I thought your view was Mollikin couldn't get a penny's worth of attorney fees. They could get out-of-pocket costs but not fees. Well, they're left in a position where they're not out of anything. They're not left saddled with. You rolled up out-of-pocket expenses and legal fees and everything into $100. I don't think so. I think legal fees were at $100 and then they were also obligated to pay costs. Your contract expressly contemplated the horrible possibility that fees could be awarded against Mollikin, didn't it? Yes, I believe so. And you said, and that might have been a great big Lodestar, $500 an hour or whatever, you said, woo-hoo, that's not on my nickel, me, or Mr. Treenan's nickel, that's on Mollikin's back, right? I believe so, yes. But you just didn't foresee the problem coming the other way, i.e., the windfall of the $300. I did not foresee that the other party would, that the other side would be paying that. I think that just was not fully addressed in the agreement. I mean, it said attorney's fees. Right, but I mean, what I'm saying, getting at it, it sort of fascinated me that you clearly saw the problem of what would happen if your client got whacked with a $300 or $500 an hour fee requirement. You said, well, the client's going to pay that, not us, that you weren't going to have to disgorge $100 an hour you'd already been paid. You get to keep that. But on the come, the other way around, you say, well, in the event that we prevail and we multiply, get damages, money more than $100 an hour, right? Right. Now, maybe that was actually contemplated because you contemplated that any and all amounts paid in connection with shall constitute the gross amount collected. Yes. And you knew going in that if you had a kill, a big one, like you got treble damages or something like that, you might end up getting quite a lot of money. And Judge Maitch addressed that issue saying that there was, number one, there was no damages, that Mollenkamp had suffered no damages under the antitrust claims. And he properly deducted for that. But again, the agreement clearly states and contemplated that Mollenkamp would recover the attorney's fees that were expended in its defense. And I think the case law clearly says that those fees were expended in its defense at the rate that they were awarded. We're into your rebuttal time. Would you care to save it? Yes, I'd like to save it. Thank you. Mr. Treinen, is it, or Treinen? It's Treinen, Your Honor. Treinen. Good morning. Please, the court. If Mr. Pizarro would have raised this issue timely, he wouldn't have done it not only when he filed his attorney's lien. He would have done it when Judge Maitch was setting the amount of the fee. Under the 285 proceeding. And if he would have done it then, he took a substantial risk that Judge Maitch would have said, oh, okay, well, this national treasury, we'll just set it out of pocket, and there's nothing to divide. And goodbye. And so he didn't do it then, and he didn't do it when he filed his attorney's lien. The arguments he raised there were. What was the judge talking about when he said there's no merit to Pizarro's suggestion that some lack of compliance with a professional and real governing contingent fee? What was he talking about? Colorado has a rule that contingent fees, rather than considering agreements all over the place, it essentially has a rule that says you have to say this, this, this, and this in a contingent fee agreement. And Pizarro, before Judge Maitch, had said that there was some deviation from the rule in disclosing what would happen to specially awarded attorney's fees. He made the argument, and he just abandoned it. But Judge Maitch said in passing, it's your agreement. So if somebody screwed up and didn't comply with the rule, it's you. And what that rule provides is that if you don't comply with it, the attorney can't enforce it. Not the client, but the attorney can't go get his contingent fee. He has to rely on a quantum merit. Mr. Trennan, what if there was a contingency agreement that met all of these nuanced requirements of Colorado law, and it simply didn't mention any hourly rate? It was just a straight contingency agreement that, you know, you'll represent me, and in return, you get 40% of whatever is recovered. Yes, sir. Without specifying attorney's fees or damages or anything else. You get 40% of whatever comes in. Under contract law or under the Colorado rule of straight contingency fees? Well, I'm just saying that's the agreement that's entered into, all right? And then I'm saying what happens if you prevail, but you get nominal damages and an award of $2 million in attorney's fees? How does that get split? Under the law of contracts, it would be split. It would just be something else coming into the pot. You know, from our client's point of view, it's a question of how much I put out. In this case, they put out almost $1 million in hourly fees and in costs and the experts, and whatever comes back is split, and that's the way you want to treat the client and be fair about it. Even though the damage award is $1 and the attorney fee award, using traditional lodestar analysis, et cetera, is $2 million. Yes. That gets split with the client. Absolutely. That was the deal here. It all went into the same pot. That's his big argument is that somehow the 285 award, and Judge Maitz said my time was worth $350 an hour and his time was worth $300, that it trumps the agreement between the party. And Venegas v. Mitchell, the Supreme Court case, says, look, 285 is just for the purpose of setting what the defendant owes the plaintiff. What the plaintiff has to pay his lawyers, that's subject to the agreement. The 285 award goes to the party. It doesn't go to the lawyer, and, you know, that's the way it works. It doesn't matter what the judge said about your time or how valuable you were or how much your reason was. Even if the entire award is for attorney's fee. That's what this was. See? This entire award was either for attorney's fees or the experts because this agreement was written for the purpose of the big pie in the sky, antitrust counterclaim. I think what Judge Lynn was getting at was a circumstance in which you had a very large award nominal. You had an original deal where the lawyer took on the case and said, I get, you know, if we win anything, I get 40% of it, and the client gets 60. And it turns out that there's a penny's worth of actual damages awarded, peppercorn, but then a whole mess of money for legal fees. Ethically, under NTU, how could the corporation get any of that? Well, NTU involved, first of all, it involved a stranger to litigation. I mean, this union that's coming in, I guess the court was a little afraid that you've got a company that's in the litigation business that pays lawyers a salary and then comes in and perpetuates itself with these large fee awards that it gets over and over as part of its normal course of business. And that implicated the ethical rules of fee splitting and unauthorized practice. This was a case where we're a party. We're the client. You're saying so long as Molly Kim isn't running a separate law firm business on the side, you know, engaging generally in the practice of law, then NTU just doesn't apply to them. Well, there's lots of reasons I say NTU doesn't apply. That's one of them. But under Venegas, he wasn't splitting with us. We were splitting with him. I mean, it's not a question of the lawyer splitting his entitlement with a non-lawyer. He didn't have anything to split until we gave it to him because this fee award belongs to the party. It doesn't belong to him in the first instance, and he had no standing to apply for it. But one thing's for sure, he would have brought it up at the right time because Mates would have said, well, if I apply that, not only are you not going to get a big piece, a little piece of a bigger pie, I'm going to cut the size of the pie and you're not going to get anything. So he didn't raise it below because at the 285 proceeding. What are a few of the other reasons why NTU doesn't apply besides the fact that your client's not engaged in litigating? Well, another reason NTU doesn't apply is because the lawyers weren't seeking any more money. The lawyers were content with what they got. This is a case where the lawyer himself is injecting himself into the dispute as a principal and saying, I have standing to get more money. That's not what happened at NTU. Any other reasons? You said there were a whole lot of reasons. Yes. Calling you on your bluff. The fact here that there's no danger of the unauthorized practice of law. We had a lawyer. Molly Kemp had Mr. Pizarro. They weren't going to practice law on their own, and their judgment wasn't going to affect his judgment except insofar as any other client tries to get his lawyer to act in a particular way. So it's not like there's this union pulling the strings and advancing an independent agenda. It's just a regular client-lawyer relationship. And furthermore, National Treasury didn't involve an agreement between the lawyer and the client that you would have to essentially destroy. You would have to decide that for some reason he got bound by his word, that he doesn't have to perform his solemn obligation to his client. And to me, that's at the bottom of all the ethical rules that there could be, that you're fair with your client and you live with your deal. Justice, in this side, I'm curious here because I don't think it relates to anything that's really before us. But you are the trinent that's also a signatory to the agreement, right? I am. So in a sense, you would benefit if your client lost this case. Yeah, but we realized that, and I entered into a separate agreement with my I'm stopped at what the division was. So you could give him X number of dollars and I wouldn't get anything. So that's how we cleared that conflict. I assumed you had some arrangement. Yes, Your Honor. Does the court have anything else? If this case came out the way it should have, Climax paid what it should have, if National Treasury would have been employed, they would have got a windfall. And this isn't the place to argue whether National Treasury is good law. Some circuits say that it's not. But the court shouldn't get into the business of looking behind where the party gets its legal services. And Blum says, here's how you calculate the fee under these shifting statutes, reasonable hours times a reasonable rate. And once you depart from that, I think you're on a slippery slope. But this case came out the way it should have. Climax paid what it should have. The client got what it should have, and it paid the lawyers. It was a bad deal, as it turned out, because we didn't get an antitrust award. But that's life. And I have to live with it, and I think he does, too. Thank you, Mr. Treinen. Thank you. Pizarro has some time to rebuttal. Thank you, Your Honor. I found on Judge Meech's order, which is on page 8-2, it says that I had argued to the lack of substantial compliance with rules governing contingency fees set forth in Chapter 23.3 of the Colorado Rules of Professional Conduct. So that issue was before the court as far as professional responsibility. But beyond that, and perhaps more importantly, there seems to be a confusion between the right to request attorney's fees pursuant to a fee-substituting statute and then the entitlement decision later on. Of course, the party is the only one that's entitled to request that fee, and then the distribution gets carried out according to an agreement. And this kind of a situation was addressed in Blanchard v. Bergeron, the Supreme Court case, where, again, I think the appeals court cut back an awards fee from like $7,500 to $4,000 because they said that the contingency fee capped what the reasonable rate was. And then the Supreme Court said, no, that's not correct. Also, another important case in this situation is Phillips v. the General Services Administration, which sets out the two rules that control this, is that Malikim incurred those fees by having me defend them on this case, and it could not have received those fees from the court had it not had some express or implied agreement that those fees would be turned over to me and paid out to me, actually, is what the language. So as far as I'm concerned, the law is clear. The issues that were raised below and they permeated all of the briefs, and so it should come out as the cases are well established as far as fee shifting. And Malikim would have been left at the place Climax founded at the beginning. I would receive a fully compensatory fee, and all other issues would be avoided. Thank you, Mr. Pizzaro. Thank you. Case will be taken under advisement. Thank you. All rise. The Honorable Court is adjourned from day to day.